UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SUSAN LEE,                                              CIVIL NO. 13-950 (JNE/JSM)

      Plaintiff,

v.                                                      <u>REPORT AND RECOMMENDATION</u>

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
MERSCORP HOLDINGS, INC.,
HSBC BANK USA, N.A. and also all
other persons, unknown claiming any right,
title, estate, interest, or lien in the real
estate described in the complaint herein,

      Defendants.

This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 10].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).  Pursuant to this Court's Order dated September 6, 2013 [Docket No. 20] this Report and Recommendation is being issued based on the parties' written submissions.

Plaintiff seeks to invalidate the foreclosure of the mortgage on her home.  Plaintiff asserts three claims against defendants: (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title.  For the reasons stated forth below, the Court recommends that defendants' Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.[1]

---

[1]     In the caption of the Complaint, in addition to suing Mortgage Electronic Registration System, Inc., MERSCORP Holdings, Inc. and HSBC Bank USA, N.A., plaintiff also purports to sue "all other persons unknown claiming any right, title, estate,

I.    **BACKGROUND**

On April 2, 2013, plaintiff, sued defendants Mortgage Electronic Registration System, Inc., MERSCORP Holdings, Inc. and HSBC Bank USA, N.A., (collectively "defendants") in state court.  Notice of Removal, Ex. Attach. 1 (Complaint) [Docket No. 1-1].  Defendants removed the suit to federal district court on April 24, 2013.  Notice of Removal [Docket No. 1].

The facts bearing on defendants' motion to dismiss are as follows: On October 26, 2006, plaintiff executed and delivered a note to Decision One Mortgage Company, LLC ("Decision One") relating to property located in Bloomington, MN ("Property").  See Complaint [Docket No. 1-1], ¶¶ 1, 6.  On the same day, plaintiff executed and delivered a mortgage in favor of Mortgage Electronic Registration System, Inc. ("MERS") as nominee for Decision One.  Id., ¶ 6, Ex. 1 (Mortgage).  Plaintiff claims that a "MERS ServicerID Report" dated March 20, 2013, provided that defendant HSBC Bank USA, Inc. ("HSBC") was an "investor" of the loan and Wells Fargo Bank, N.A. ("Wells Fargo") was the "Servicer."  Id., ¶ 8, Ex. 2 (MERS ServicerID Report).[2]

On February 17, 2009, HSBC executed a Limited Power of Attorney from it to Wells Fargo to service mortgage loans (including the mortgages and the loans the mortgages secure) held by HSBC, which was recorded with the Hennepin County

---

interest, or lien in the real estate described in the complaint herein." As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them;" the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

[2]    Exhibit 2 makes no mention of HSBC.  If fact, no investor's name is listed on the document.

Recorder on March 24, 2009.  Index to Appendix to Defendants' Motion to Dismiss ("Def. Appx.") [Docket No. 12], App. 1-5 (Limited Power of Attorney Between HSBC Bank and Wells Fargo Bank).  Tasks delegated to Wells Fargo by this Limited Power of Attorney included obtaining any interest in any property which is the subject of a mortgage, and to "contract for, purchase, receive, take possession of and obtain evidence of title in and the Property."  Id.

On February 27, 2012, Decision One drafted an assignment of Mortgage from MERS, as nominee of Decision One, to HSBC.  Id., ¶ 9, Ex. 3 (Assignment of Mortgage).  Kate Johnson, Assistant Secretary for MERS, executed the Assignment of Mortgage, which was recorded in the Hennepin County Office of the Recorder on March 5, 2012.  Id.  Plaintiff pled upon "information and belief" that Johnson did not have the legal authority to execute the Assignment of Mortgage, as she was actually an employee of Wells Fargo, and there was no evidence of her power, as an employee of Wells Fargo, to execute foreclosure documents on behalf of MERS.  Id., ¶ 10, Ex. 4 (Affidavit of Private Investigator).

Plaintiff claimed upon "information and belief" that after being assigned the Mortgage, HSBC securitized plaintiff's loan into a mortgage-backed securitization "most likely bearing the namesake similar to the 'HSI Asset Loan Obligation Trust.'" Id., ¶ 12. Further, as the process of securitization is similar across the industry, plaintiff alleged "upon information and belief" that the applicable securitization documents that the parties complete and record the following assignments of the mortgage: (1) from Decision One, as the originator of the loan, to HSBC, as the seller; (2) from HSBC to

3

HSI Asset Securitization Corporation, as depositor; and (3) from HSI Asset Securitization Corporation to HSBC, as trustee. Id., ¶¶ 13, 14.

Plaintiff further alleged that "Wells Fargo was appointed master servicer of the mortgages pooled in the trust via the Pooling and Service Agreement;" the Trust Agreement requires delivery to the Trustee a mortgage file which contains, among other documents, any assignments of mortgage; and upon "information and belief" the Trust Agreement empowers Wells Fargo with the power to foreclose on any mortgage on behalf of the Trustee. Id., ¶¶ 15-17. According to plaintiff, neither the Trust Agreement nor any power of attorney from Decision One to HSBC appear in records for the Property in violation of Minn. Stat. 580.05. Id., ¶ 17.

On April 9, 2012, Stephanie Nelson, an attorney at the law firm of Shapiro & Zielke, LLP ("Shapiro"), executed a Notice of Pendency to Foreclose Mortgage on behalf of HSBC, which was recorded in the Hennepin County Office of the Recorder on April 10, 2012. Id., ¶ 18, Ex. 5 (Notice of Pendency). Plaintiff pled upon "information and belief" that Nelson did not have the legal authority to execute the Notice of Pendency at the time she executed it as there existed no prior power of attorney from HSBC empowering Shapiro to act as its attorney-in-fact regarding this specific mortgage or foreclosure. Id., ¶ 19.

On April 18, 2012, Keoviseth Seung, Vice President of Loan Documentation for Wells Fargo, as the attorney-in-fact for HSBC, executed a Power of Attorney to Foreclose Mortgage effective as of April 6, 2012, authorizing Shapiro to foreclose the mortgage by advertisement, and ratifying all acts of Shapiro that were consistent with the Power of Attorney taken at any time since April 6, 2012. Id., Ex. 6 (Power of

4

Attorney).  The Power of Attorney was recorded with the Hennepin County Office of the Recorder on May 8, 2012.  <u>Id.</u>  Plaintiff pled upon "information and belief" that Seung did not have legal authority to execute this Notice of Pendency because at the time he executed it, he was actually an employee of Wells Fargo."  <u>Id.</u>, ¶ 21, Ex. 7 (Affidavit of Investigator).

On August 7, 2012, Nelson executed a Notice of Pendency empowering the Shapiro law firm to foreclose on the Property, which was recorded in the Hennepin County Office of the Recorder on August 8, 2012.  <u>Id.</u>, ¶ 22, Ex. 8 (Notice of Pendency).  Plaintiff pled upon "information and belief" that Nelson did not have the legal authority to execute the Notice of Pendency at the time she executed it.  <u>Id.</u>, ¶ 23.  On August 8, 2012, Kendell Hoskins, Vice President of Loan Documentation of Wells Fargo,[3] signed the Power of Attorney on behalf of HSBC, effective August 6, 2012, empowering Shapiro to foreclose on the Property and to bid in on the Property at the foreclosure sale, and ratified all acts by Shapiro as of the effective date of the Power of Attorney.  <u>Id.</u>, ¶ 24, Ex. 9 (Power of Attorney).  The Power of Attorney was recorded in the Hennepin County Officer of the Recorder on August 20, 2012.  <u>Id.</u>  Plaintiff pled upon "information and belief" that Hoskins did not have the legal authority to execute the Power of Attorney at the time he executed it, as there existed no power of attorney from HSBC empowering Wells Fargo as its attorney-in-fact for this specific mortgage or loan foreclosure.  <u>Id.</u>, ¶ 25.

---

[3]     Plaintiff pled that this Power of Attorney was signed by Hoskins as Vice President of Loan Documentation for HSBC. <u>Id.</u>, ¶ 24.  But the document states it was signed by Hoskins as Vice President of Loan Documentation for <u>Wells Fargo</u> on behalf of HSBC. <u>Id.</u>, Ex. 9 (August 8, 2012 Power of Attorney).

HSBC, through Shapiro, noticed a sheriff's sale for the Property, which was first published on August 15, 2012.  Id., Ex. 10 (Sheriff's Certificate of Sale and Foreclosure Record).  The sheriff's sale for the Property occurred on October 3, 2012.  Id., ¶ 27. Shapiro appeared on behalf of HSBC at the Sheriff's Sale, and exercised the power of the sale clause in the Mortgage by bidding the amount owed to HSBC.  Id.  A Sheriff's Certificate of Sale and the foreclosure record was recorded in the Hennepin County Office of the Recorder.  Id., ¶ 27, Ex. 10 (Sheriff's Certificate of Sale and Foreclosure Record).  Plaintiff alleged that HSBC did not have the legal authority to exercise the power of sale in the Mortgage because of the unrecorded assignments of the Mortgage. Id., ¶ 27.

Plaintiff claimed that on or about April 13, 2011, Shapiro received constructive notice that HSBC had engaged in "unsafe and unsound" banking practices regarding foreclosures, as on that date, HSBC entered into a Consent Order with the Officer of Comptroller of the Currency in which HSBC did not contest that it had engaged in a variety of "unsafe and unsound" banking practices in conducting foreclosures.  Id., ¶ 28.

Plaintiff asserted that HSBC at all times knew, or had reason to know, that the February 27, 2012 Assignment of Mortgage and various notices of pendency and powers of attorney were all void.  Id., ¶ 31.

Plaintiff alleged the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiff asserted a quiet title action seeking a determination regarding defendants' adverse interest in the Property.  Id., ¶¶ 35-41.  According to plaintiff, in a quiet title action, the burden of proof is on the mortgagee asserting an adverse interest in the property and

defendants must prove their title to the Mortgage by preponderance of the evidence. Id., ¶¶ 38, 39.  Plaintiff maintained that defendants' claim to an interest in her Property was void because there existed unrecorded assignments of mortgage conveying the mortgagee's power of sale to third parties; HSBC did not have the mortgagee's power of sale on the date of the sheriff's sale; and the foreclosure was void because the individuals executing the foreclosure documents did not have legal authority to execute the documents when they signed the documents, and defendants did not record the necessary powers of attorney authorizing the foreclosure.  Id., ¶ 40.

In Count II, plaintiff sought a declaratory judgment under Minn. Stat. § 555.02 that the assignment of mortgage, notices of pendency, and powers of attorney were all void, and that she remains the owner of the Property in fee title.  Id., ¶¶ 42-44.

In Count III, alleging slander of title, plaintiff asserted that Shapiro, acting at direction of HSBC, drafted and recorded documents that were false and not executed by legally authorized persons, and that Shapiro, at the direction of HSBC, knew that the documents were false because unauthorized persons without authority executed the notices of pendency and the assignment of mortgage.  Id., ¶¶ 45-50.

As relief, plaintiff sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Sheriff's Certificate of Sale, the various assignments of mortgage, notices of pendency, and powers of attorney were all void; (3) a declaration that plaintiff remained the owner of the Property in fee title; and (4) money damages. Id., Prayer for Relief.

Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that plaintiff's quiet title and slander of title

claims failed because her allegations that every relevant mortgage-related document was executed without authority and that there are missing mortgage assignments, were conclusory and without support of facts and the law.  Id., pp. 7-14, 16.   Additionally, defendants submitted that plaintiff lacked standing to rely on hypothetical securitization and trust documents to claim that there was a missing and unrecorded assignment of her mortgage.  Id., pp. 11-14.  As for her declaratory judgment count, because plaintiff's substantive claims failed, this claim must also be dismissed.  Id., p. 16.

## II.   STANDARD OF REVIEW

In  considering  a  motion  to  dismiss  under  Rule  12(b)(6),  the  pleadings  are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. V. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).   Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Id. (quoting Twombly, 550 U.S., at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.   Fed. R. Civ. P. 12(d).   "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.   See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

With these standards in mind, the Court turns to the defendants' motion to dismiss.

## III.   DISCUSSION

### A.   Quiet Title

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

In response to defendants' motion to dismiss the quiet title claim, plaintiff first contended that all she had to plead was that she was in possession of the Property and defendants had a claim adverse to her.  Memorandum in Opposition to Motion to Dismiss ("Pl. Mem."), pp. 5-6 [Docket No. 16].  Plaintiff also maintained that as defendants had the burden of proof with respect to her quiet title claim, the federal rules could not be applied in a manner that denied her state substantive rights.  Id., pp. 10-11.

The position urged by plaintiff – that this Court should apply the Minnesota state court pleading standards to her quiet title claim – is meritless.  Plaintiff's counsel has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank,

N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan

Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva)); Gharwal v.

Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D.

Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly

rejected" this argument).

In addition, the Eighth Circuit has settled the "burden of proof" argument

advocated by plaintiff.  See Karnatcheva, 704 F.3d at 548.  As the court explained in

Gharwal:

> Karnatcheva rejected that [burden of proof] argument,
> specifically holding that § 559.01 and the other authority on
> which [plaintiff] relies 'are not state substantive standards
> that govern the success of a quiet title claim.  Karnatcheva,
> 704 F.3d at 548.  Whether or not the Eighth Circuit's holding
> was "error" is not for this Court to decide; Karnatcheva is
> binding precedent, and this Court must apply it.  The Court
> notes, however, that although he was addressing a different
> issue, plaintiff's counsel himself[4] has conceded in the past
> "that, under Fed. R. Civ. P. 11, a quiet-title claim must be
> supported by an objectively reasonable basis for believing
> that the defendant's asserted interest in the property is
> invalid."  Welk v GMAC Mortg., LLC, 850 F.Supp.2d 976,
> 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).
> Here, plaintiffs quiet title claims are based only on
> conclusory statements and speculation, but no facts.  The
> claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiff's quiet title claim applying the standards

governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Mere allegations of plaintiff's possession of the Property and conclusory

statements that defendants' adverse claims are invalid are insufficient to state a claim

---

[4]    Both Gharwal and Karnatcheva were represented by William Butler, plaintiff's
counsel in the instant case.

for relief.  See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

Consequently, plaintiff's wholly unsupported statements – most of which were made on "information and belief" – about unrecorded assignments and the alleged lack of legal authority by the individuals signing various instruments, utterly fail the pleading requirements governing actions in this Court.  See Complaint, ¶¶ 10, 12, 19, 21, 23, 25, 27.  While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11-3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), the Eighth Circuit has unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards described by the Supreme Court in Iqbal and Twombly.  See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal

pleading requirements); <u>Iverson v. Wells Fargo Bank, N.A.</u>, 2 Fed. Appx. 624, 2013 WL 1688903, at *1 (8th Cir. April 19, 2013) (unpublished) (same); <u>Sorem v. Bank of New York Mellon</u>, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); <u>Ko v. Mortgage Elec. Registration Sys.</u>, Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); <u>Quale v. Aurora Loan Services, LLC</u>, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); <u>Lara v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); <u>Schumacher v. Federal Home Loan Mortg. Corp.</u>, Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013).

Further, plaintiff's claims that the foreclosure of the mortgage was void under Minnesota law because there was an unrecorded assignment of her mortgage as evidenced by a MERS ServicerID Report, and the securitization documents and a trust allegedly required assignments of mortgage to the trustee and that they be recorded, find no support in the facts or law.   Complaint, ¶¶ 9, 13, 14, 16, 18, Ex. 2 (MERS ServicerID Report dated March 20, 2013); Pl. Mem., pp. 6-9.

First, there is nothing about the MERS ServicerID Report dated March 20, 2013, that mentions HSBC, much less when HSBC was assigned the Mortgage from MERS. But even if the this report did state that HSBC was the "investor" on plaintiff's loan as alleged by plaintiff, (Complaint, ¶ 8), the fact that HSBC was an investor as of March 2013 is totally consistent with the Assignment of Mortgage to HSBC on February 27, 2012.  <u>See Welk v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *3 (D. Minn., May 17, 2013) (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page—and noting "[i]t is no surprise that

Fannie Mae is listed as having an interest in October 2012—Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011"); Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *3 (D. Minn. May 15, 2013) (rejecting the same "evidence"–a screen shot from the MERS loan finder website showing Fannie Mae as the "investor" for the Mortgage, and stating "this screen shot is only evidence that, on October 3, 2012, Fannie Mae had an interest in the Mortgage. It does not establish the allegations in the Complaint; rather, it is just the sort of 'shot in the dark' allegation that does not meet Rule 8's pleading standards.  Thus, not only is there no factual support for plaintiff's bald assertions, the record shows the exact opposite – the foreclosure and the subsequent quit claim deed were proper.").

Second, allegations about unidentified mortgage securitization documents, some unnamed trust and unknown provisions within these documents, to speculate that there must have been an unrecorded assignment of plaintiff's mortgage at a certain point in time, are of no avail.  In fact, this Court has no basis for assuming that the purported language of any of these documents even applies to plaintiff or her mortgage.  But even if the language did govern plaintiff's mortgage, it does not provide a plausible inference that an unrecorded assignment to HCBS had actually occurred.  See, e.g., Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating "[s]imply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.  Plaintiff's allegations do not rise above speculation."); Cheng Lee v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-180 (DWF/SER),

2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae. This conclusory allegation is insufficient.").

Third, the language of the alleged securitization documents and trust agreement does not support the inference that an unrecorded assignment took place or when it took place, particularly when plaintiff admits that a recorded assignment occurred from MERS to HSBC and attached to her Complaint a facially valid record of the assignment (Complaint, ¶ 9, Ex. 2 (Assignment of Mortgage)). See Dunbar v. Wells Fargo Bank, N.A., 853 F. Supp.2d 839, 848 (D. Minn. 2012), aff'd 709 F.3d 1254, 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo. As a result, dismissal is warranted.").

Fourth, plaintiff's allegations on "information and belief" that Johnson lacked signing authority on behalf of MERS to execute the Assignment of Mortgage, or that Nelson, Seung and Hoskins lacked signing authority on behalf of HSBC to execute mortgage foreclosure-related documents, "do not hold up to even the slightest scrutiny." See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549(DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiffs' allegations regarding individuals' alleged lack of

authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); <u>Segura v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing <u>Mine v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013)); <u>Welk</u>, 2013 WL 2155463, at *4 ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations."); <u>Stilp v. HSBC Bank USA, N.A.</u>, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), <u>aff'd</u>, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted).

To the contrary, the documents referenced in and attached to the Complaint and in the public record, show an assignment of the mortgage to HSBC prior to the foreclosure proceedings, and a properly recorded Notice of Pendency[5] and Power of Attorney to Foreclose.[6]   Complaint, Exs. 3 (Assignment of Mortgage), 8 (Notice of Pendency), 9 (Power of Attorney), 10 (Sheriff's Certificate of Sale and Foreclosure Record); Def. Appx., App. 1-5 (March 24, 2009 Limited Power of Attorney from HSBC and Wells Fargo).  Thus, plaintiff's claim that the foreclosure was void on the basis that the April 9, 2012 and August 7, 2012 Notices of Pendency and Powers of Attorney giving Shapiro the power to foreclose on behalf of HSBC were invalid, (Complaint, ¶¶ 18, 19, 22, 23), is belied by the documents.

On April 18, 2012, Seung, Vice President of Loan Documentation for Wells Fargo, as the attorney-in-fact for HSBC, executed a Power of Attorney to Foreclose Mortgage, authorizing Shapiro to foreclose the mortgage by advertisement.  Id., Ex. 6 (April 9, 2012 Power of Attorney).  The Power of Attorney stated it was effective as of

---

[5]   The publication of the notice of foreclosure first occurred on August 15, 2012, and the Notice of Pendency was recorded on August 7, 2012.  As required by Minn. Stat. § 580.32, subd. 3, the Notice of Pendency was recorded prior to the first date of publication of the foreclosure notice.

[6]   The Power of Attorney was recorded on August 20, 2012, but the foreclosure sale did not take place until October 3, 2012.  As required by Minn. Stat. § 580.05, the Power of Attorney was recorded before the foreclosure sale took place.  Smith v. Wells Fargo Bank, N.A., Civil No.13-0439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013) ("Plaintiff claims that no valid power of attorney existed when the law firm of Shapiro & Zielke, LLP, created the Notice of Sale and caused it to be published, because the Power of Attorney was executed after the date of the Notice of Sale and after the date of the first publication of the Notice of Sale. However, the relevant statute does not dictate when the power of attorney must be executed. Rather, it requires only that the power of attorney be recorded prior to the foreclosure sale. Here, the Power of Attorney was recorded on April 26, 2012, and the property was sold at a foreclosure sale on August 7, 2012. Thus, Defendant complied with the statutory requirements.").  .

April 6, 2012, and ratified all acts of Shapiro that were consistent with the Power of Attorney taken at any time since April 6, 2012. Id. Similarly, the August 9, 2012 Power of Attorney signed by Hoskins for Wells Fargo (as the attorney-in-fact for HSBC), stated that it was effective August 6, 2012, and ratified all of the acts made by Shapiro since the effective date. These documents gave Shapiro the authority to execute the April 9, 2012 and August 7, 2012 Notices of Pendency. See Smith v. Wells Fargo Bank, N.A., Civil No. 13-0439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013) ("The power of a principal to retroactively validate the acts of its agents has long been recognized, See United States v. Heinszen, 206 U.S. 370, 382 (1907), and nothing in Minn. Stat. § 580.05 prohibits such ratification.").

Likewise, plaintiff's allegations that Wells Fargo lacked any authority from HSBC to act as its attorney-in-fact ignored the Limited Power of Attorney from HSBC to Wells Fargo to service all of HSBC mortgage loans, which was recorded with the Hennepin County Recorder on March 24, 2009. Def. Appx., App. 1-5 (Limited Power of Attorney between HSBC Bank and Wells Fargo Bank).

In sum, not only is there no factual support for plaintiff's bald assertions, the record shows the exact opposite—there was no unrecorded assignment of the mortgage, those individuals who signed the Assignment of Mortgage and foreclosure-related documents had the authority to do so, and the foreclosure was proper.

Finally, even if the language from the alleged securitization documents and trust agreement described in the Complaint did apply to plaintiff's mortgage and there was any truth to plaintiff's speculative statements about the lack of signing authority of Johnson (as to the Assignment of Mortgage), and Nelson, Seung and Hoskins (as to the

Notices of Pendency and Powers of Attorney),[7] plaintiff suffered no injury in fact as a result and, therefore lack standing to pursue a quiet title claim on this basis. See Karnatcheva, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); Sorem, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); Quale, 2013 WL 3166584, at *1 (string citation omitted) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); Forseth v. Bank of Am., N.A., Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document

---

[7]     Under Minn. Stat. § 358.50, an acknowledgment made in a representative capacity "is prima facie evidence" that the instrument or electronic record was executed and delivered with proper authority.

related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); Welk, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute."); Kaylor v. Bank of America, N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (homeowners who were not parties to the mortgage assignment lack standing); Novak, 2012 WL 3638513, at *6 ("plaintiffs lack standing to challenge the assignment: they are not parties to the assignment and any dispute would be between the assignor and assignee"); Stinson v. U.S. Bank, N.A., Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-

party beneficiaries to such agreements."); <u>Sovis v. Bank of New York Mellon</u>, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012), (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); <u>Gerlich v. Countrywide Home Loans, Inc.</u>, Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2-3 (D. Minn. Sept. 7, 2011) (plaintiff not a party to the assignment and, therefore, lacked standing to assert a claim regarding the assignment); <u>Kebasso v. BAC Home Loans Servicing, LP</u>, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object.'") (quoting <u>Jackson</u>, 770 N.W.2d at 500); <u>Greene v. Home Loan Servs., Inc.</u>, Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

For all the reasons stated above, the Court finds that defendants' motion to dismiss the quiet title actions against them should be granted.

**B.**   **Slander of Title**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).  To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).

Plaintiff responded to defendants' motion to dismiss her slander of title claim by merely stating the elements for the claim and restating the allegations from the Complaint.  Pl. Mem., pp. 9-10.  The Court finds the claim must be dismissed because plaintiff has alleged no facts from which this Court could infer that defendants made a

false statement, acted maliciously or that plaintiffs suffered any pecuniary loss from a publication concerning title to his property.  See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").

Additionally, even assuming that documents recorded as to the Property are technically false, this does not amount to a cloud on the title of the Property where plaintiff has clouded the title based on her default.  Pope v. Fed Home Loan Mortgage Corp., Civ. No. 12-3094, 2013 WL 2251001, at *4 (D. Minn. May 22, 2013) ("An unauthorized assignment may be technically false, but it does not cloud the title to property on which the mortgagee has undisputedly defaulted.  The only cloud on the title of the Popes' property is a cloud of their own making: they did not make the payments due under their mortgage and as a result, they lost their property through foreclosure.").

For all of these reasons, defendants' motion to dismiss plaintiff's slander of title claim should be granted.[8]

---

[8]     The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich, 2012 WL 3612023, at *6.  Defendants did not argue in favor of dismissal based on plaintiff''s failure to meet

C.   **Declaratory Judgment**

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[she is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, defendants' motion to dismiss should be granted in its entirety and plaintiff's suit should be dismissed with prejudice.[9]

---

this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.  Therefore, the Court recommends dismissal of the suit with prejudice.

[9]     "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here.  See McLean v. United States, 566 F.3d

## IV.     RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 10] be **GRANTED**.

2.      This matter be dismissed with prejudice.


Dated:          January 6, 2014

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge



## **NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 20, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).